AMELIA L. WOLF, as Administratrix of the Estate of
JOSEPH F. WOLF, Deceased, Appellant, *v.* BALTIMORE
AND OHIO RAILROAD COMPANY, Respondent.

(Argued January 22, 1934; decided March 6, 1934.)

*John Van Voorhis* for appellant. Failure of the flagman of the preceding train to warn the following train was properly submitted to the jury as a contributing proximate cause of the accident. (*Rocco* v. *Lehigh Valley R. R. Co.*, 288 U. S. 275; *Healy* v. *Erie R. R. Co.*, 259 N. Y. 40; *Union Pacific R. R. Co.* v. *Hadley*, 246 U. S. 330; *Illinois Central R. R. Co.* v. *Skaggs*, 240 U. S. 66; *Grand Trunk Ry. Co.* v. *Lindsay*, 233 U. S. 42; *Brock* v. *Mobile & O. R. Co.*, 51 S. W. Rep. [2d] 100; *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47; *O'Neill* v. *City of Port Jervis*, 253 N. Y. 423.) The evidence did not establish as a matter of law that plaintiff's intestate was guilty of contributory negligence. (*Central Vermont Ry. Co.* v. *White*, 238 U. S. 507; *Danielsen* v. *Morse Dry Dock & Repair Co.*, 235 N. Y. 439; *Dunn* v. *N. Y. C. & H. R. R. R. Co.*, 208 N. Y. 345.)

*William C. Combs* for respondent. The conduct of plaintiff's intestate was the primary cause of his death. (*Unadilla Valley Ry. Co.* v. *Caldine*, 278 U. S. 139; *Unadilla Valley Ry. Co.* v. *Dibble*, 31 Fed. Rep. [2d] 239; *Davis* v. *Kennedy*, 266 U. S. 147; *Frese* v. *Chicago, B. & Q. R. R. Co.*, 263 U. S. 1; *Great Northern R. R. Co.* v. *Wiles*, 240 U. S. 444; *St. Louis Southwestern Ry. Co.* v. *Simpson*, 286 U. S. 346; *Southern Ry. Co.* v. *Youngblood*, 286 U. S. 313; *Southern Ry. Co.* v. *Dantzler*, 286 U. S. 318; *Virginian Ry. Co.* v. *Linkous*, 230 Fed. Rep. 88; *Southern Ry. Co.* v. *Hylton*, 37 Fed. Rep. [2d] 843.)

O'BRIEN, J. During a snow storm so violent that, according to some of the testimony, semaphores on defendant's right of way were invisible from a train, plaintiff's intestate, a locomotive engineer employed by defendant, drove his passenger train past one of these signals into a block occupied by defendant's freight train

headed in the same direction but then stationary and, due to a collision between these trains, he was killed. This action is brought under the Federal Employers' Liability Act (35 Stat. 65, 66) and the principal issues relate to negligence by decedent, negligence by defendant, comparative negligence of the parties and, in the event of negligence by both, the proportion of damages payable by defendant.

The trial judge charged that failure by plaintiff's intestate to stop his train at the block signal constitutes negligence as matter of law. The Appellate Division took the same view and in addition held that his negligence constitutes the sole proximate cause of his death and precludes recovery.

There is evidence that the blizzard was so blinding that two employees standing eight feet apart at a point one-half mile from the semaphore could not see each other and that the location of the block signal was invisible from the train. The jury could infer from this evidence that, even assuming decedent looked for the signal, he could not discover its location and, therefore, was unable, under prevailing weather conditions, to know whether the signal registered danger. The question of fact then arises whether he acted as a reasonable man in proceeding through a storm which rendered all objects invisible. Instructions on the time table provide: " The maximum speed of any train after passing an automatic block displayed at stop must not be in excess of twenty miles per hour until a caution or clear signal is displayed." Here is a plain implication that an engineer is not, under all circumstances, forbidden to pass a stop signal even when it can be seen. Testimony in the case could have been accepted as true that even the location of the signal post could not be descried. If the engineer was unable by reason of the storm even to recognize the location of the signal then rule 885 need not be rigidly applied. That rule presupposes capability of knowing the proximity

of the semaphore by the engineer but inability to decipher the signal. If he knows the signal is there but, due to fog or storm, he cannot read it, then his duty under rule 885 is to stop his train and to send a fireman or flagman ahead to read it. When the entire topography is so obscured that even the proximity of signals cannot be known, is the engineer absolutely bound to bring his train to a stop and remain stationary until the atmosphere clears and objects again become visible? In view of the instruction on the time table, we think that rule 885, as well as rules 504, 505 and 506, which direct as to the operation of trains stopped by block signals and the responsibility of the engineer, can be strictly applied only when the location of the signal can be known. The instructions on the time table detract from the force of any absolute prohibition to proceed. In proceeding, weather conditions may render compliance with rules 504, 505, 506 and 885 impossible. A jury, taking into consideration the duty which an engineer owes to passengers in transporting them to their destination and to the public in carrying the mails, might fairly draw an inference of fact that plaintiff's intestate in advancing cautiously at fifteen or twenty miles an hour and in relying upon the crew of a preceding train to obey the rule in respect to warning of its presence by torpedoes acted as a reasonably prudent man and was not guilty of negligence. The correctness of his conduct is involved in obscurity by the provisions of the rules and the instructions on the time table. His negligence or lack of it is, we think, a question of fact, not one of law.

Assuming that a jury would determine this engineer to be guilty of negligence, it could also conclude on the evidence that his negligence was not the sole cause of his death. Rule 99 reads as follows:

" When a train stops or is delayed, under circumstances in which it may be overtaken by another train, the flag-

man must go back immediately with stop signals a sufficient distance to insure full protection. On reaching the required distance (or on the approach of a train before that distance is reached) he will display stop signals, and, in addition, place two torpedoes on the rail opposite each other, so as to make one report. When recalled he may, unless an approaching train is within sight or hearing, return to his train, first removing the torpedo from the fireman's side, and placing it on the rail on the engineer's side 90 feet (3 rail lengths) from the other.

"At night, and in fog or storm, day or night, the flagman will, the last thing when recalled, in addition to placing torpedoes, place one lighted yellow fusee, upright outside the rail on the engineer's side and one or more at other points, if necessary to protect his train while returning.

" The front of a train must be protected in the same way when necessary by the front-trainman. If the front-trainman is unable to leave his train the fireman must go in his place.

"At night, or in foggy or stormy weather, day or night, red fusees must be used in addition to other stop signals, to insure stopping train."

There is evidence for and against the proposition that the flagman on the preceding train placed torpedoes on the track as a warning to the approaching train driven by plaintiff's intestate and the Appellate Division has decided that the verdict importing violation of this rule by defendant is not against the weight of evidence. The jury was instructed to determine, in the event that violation of this rule by defendant was proved, whether that violation was one of the proximate causes of the accident. In view of the verdict the jury must have decided that, even assuming negligence by plaintiff's intestate, the accident would not have occurred except for defendant's failure to warn his train. Under the decisions, the evidence would warrant such a verdict.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

POUND, Ch. J., LEHMAN and HUBBS, JJ., concur; CROUCH, J., dissents; CRANE, J., not sitting; KELLOGG, J., not voting.

Judgment reversed, etc.