CHICAGO & ERIE RAILROAD COMPANY *v.* PATTERSON.

[No. 16,601. Filed June 23, 1941. Rehearing denied October 23, 1941. Transfer denied December 8, 1941.]

*Bowers, Feightner & Palmer* and *Arthur J. Palmer,* all of Huntington (*Follansbee, Shorey & Schupp,* of Chicago, Illinois, of counsel), for appellant.

*Kenner & Glenn,* of Huntington, for appellee.

STEVENSON, J.—This action was brought by Mary B. Patterson, administratrix of the estate of Charles W.

Patterson, deceased, against the appellant to recover damages resulting from the death of Charles W. Patterson. The action was brought under the Federal Employers' Liability Act.

The complaint was in three paragraphs, to each of which demurrers were addressed, which demurrers were each overruled. These rulings constitute the first three independent assignments of error. The issues were closed by an answer in general denial to each paragraph of complaint. The case was submitted to a jury for trial, and the jury returned a verdict in favor of the appellee, in the amount of $5,000.00. Fifty-two interrogatories were submitted to the jury, to which answers were made and returned along with the general verdict. Judgment was rendered on this verdict. Motion for new trial was filed and overruled, and this appeal has been perfected.

The fourth error assigned is the overruling of the appellant's motion for directed verdict. The fifth error assigned is the alleged error in overruling appellant's motion for judgment on the interrogatories, and the sixth error assigned is the alleged error in overruling appellant's motion for a new trial.

In considering the questions presented, it is necessary for us to set out briefly the allegations of the complaint. The first paragraph charged generally that the appellant was, on the fourteenth day of February, 1937, and for many years prior thereto, engaged in operating a railroad from Marion, Ohio, to the City of Chicago, which line of railroad passed through the towns of Decatur and Huntington, Indiana.

The complaint alleges that, at all times mentioned, the appellant was a common carrier, engaged in interstate commerce, over its said line of railroad, and that the appellee's decedent, Charles W. Patterson, had

been in the continuous employment of the appellant as a locomotive engineer for more than forty years.

The complaint alleges that, on the fourteenth day of February, 1937, said Charles W. Patterson was operating one of appellant's engines, pulling a train of freight cars from Marion, Ohio to Huntington, Indiana, which train was known and designated as train No. 3081. On this date, he was westbound and was following another of the appellant's freight trains, known as No. 3054. The complaint further charges that on this particular day a snow storm was raging and visibility was poor. The complaint then charges: "That on this day at about 10 a. m. the defendant's train known as Extra Number 3054, being the train farthest to the west of the two trains above mentioned, had approached the City of Decatur and had stopped with the rear of its train a short distance east of the east yard limits of said city; that it was snowing hard at the time, and as soon as the said train stopped the engineer of said train sounded his whistle for the flagman of said train to proceed east along the track and protect the rear of the train from trains approaching from the east. Plaintiff further avers that at the time it was provided by Rule 99 of the Book of Rules promulgated for the operation of trains by defendant company, and in full force and effect, as follows: 'When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with the flagman's signals a sufficient distance to insure full protection, placing two torpedoes, and when necessary in addition, displaying lighted fusees.' It was further provided by said rule that when day signals cannot be plainly seen, owing to weather or other conditions, then night signals must be used. It was further provided by Rule 35 of said Book of Rules, then in full force and

effect, that: 'The following signals will be used by flagman: Day signals—Red flag, torpedoes and fusees. Night signals—A red light, a white light, torpedoes and fusees.'

"Plaintiff further avers that notwithstanding the fact that it was snowing hard at the time, and that visibility was poor, and notwithstanding the fact that the engineer had given a whistle signal for the flagman to go east and protect the rear of said train extra No. 3054, and notwithstanding the provisions of rule No. 99 above set out, the flagman of extra No. 3054, an employee of defendant, negligently failed to proceed east from the rear of his train and flag approaching trains, and negligently failed to proceed east from the rear of his train and place torpedoes on the track so that they would explode and warn approaching trains, and negligently remained in the caboose of extra No. 3054. That as a direct and proximate result of the negligence of said defendant's employee in failing to flag and protect the rear of his train, as provided by the company's rules the train crew of the train, extra No. 3081, including plaintiff's decedent, which was following said extra No. 3054, could not see the rear of said extra 3054, on account of the curve in the track, and on account of the heavy falling snow, until their said train was too close to bring it to a stop, and as a result of said failure to giving flagging signals above set out said train, extra No. 3081, pulled by engine No. 3081, of which plaintiff's decedent was engineer, ran into the rear of train extra 3054, causing damage to equipment and fatally injuring this plaintiff's decedent."

This paragraph of complaint closed with a prayer for damages in the sum of $10,000.00.

The third paragraph of complaint contained substantially the same allegations of negligence, with the addi-

tional averments that said Charles W. Patterson was burned and scalded by escaping steam, as a result of said accident. Complaint alleges that these injuries caused intense pain and suffering for a period of ten weeks, and the complaint further sought to recover damages for such injuries and conscious suffering of the appellee's decedent prior to his death in the sum of $3,000.00.

The additional allegations contained in the second paragraph of complaint will be later discussed.

Demurrers were addressed to each of these paragraphs of complaint and were overruled.

The appellant now claims no error as to the overruling of the demurrers to the first and third paragraphs of the appellee's complaint. The appellant does charge error, however, in overruling appellant's demurrer to the second paragraph of the appellee's complaint. The second paragraph of complaint contained substantially all the allegations embodied in the first paragraph of complaint but alleged that, on the day in question, the engine, which the appellee's decedent was operating, had attached thereto, as a part thereof, a certain part known as an injector, which was attached to the boiler, and was operated from the engine cab by the opening and closing of a valve. The second paragraph of complaint alleges that this injector, on the day in question, was defective and out of repair, which defect was known to the appellant and that, because of such defect, it was necessary for the appellee's decedent to work therewith, during which time he was prevented from observing the track ahead. The complaint charges that the appellant negligently permitted said engine No. 3081 to remain in service with this defective appliance.

In addition to the allegations, with reference to failure of the train ahead properly to protect its rear with

a flagman, lighted fusees, and torpedoes, the second paragraph of complaint charges that as the appellee's decedent approached automatic signal block No. 810-1, located about one and one-half miles east of the accident, there was displayed thereon a yellow or caution signal and, upon seeing the same, the appellee's decedent closed the throttle of his engine and reduced the speed of his train to fifteen miles per hour. The complaint then alleged, "that this plaintiff's decedent then started to put on the injector, which was a necessary operation so that the engineer might know whether the water was circulating properly, but that on account of the defective condition of said appliance it failed to operate until a period of several minutes had elapsed, and during this space of time plaintiff's decedent was compelled to take his eyes off of the track ahead and attend to said appliance; that as soon as the injector worked properly the plaintiff's decedent looked ahead and saw the lights of the caboose of extra 3054 ahead and saw the red light on the block signal known as signal No. 812-1; that plaintiff's decedent immediately applied the brakes in emergency and attempted to stop the train, but the distance was too short and the engine of Extra 3081 collided with the caboose of Extra 3054 and, as a result of said collision, plaintiff's decedent received injuries from which he died ten weeks later."

The appellant contends that under these particular allegations of the second paragraph of complaint, it is disclosed that the appellee's decedent, by failing to obey the signals, is guilty of contributory negligence, which was the sole proximate cause of his injury and death. The appellant contends that it was, therefore, reversible error to overrule the demurrer to this second paragraph of complaint.

In passing upon this question, our attention is directed to the answers returned by the jury to the interrogatories. The jury found in answer to interrogatories that engine No. 3081 was, on the 14th day of February, 1937, equipped with an injector, but further found that there was "no evidence" as to whether or not said injector was in good repair on this particular occasion. Since this allegation of negligence is the only additional charge of negligence against the appellant which does not appear in the first and third paragraphs of complaint, it seems clear to us that the verdict of the jury was not predicated upon this second paragraph of complaint. Since it is conceded by the appellant that the first and third paragraphs of complaint are sufficient, and since the jury, by its special answers to the interrogatories has indicated that all facts found are applicable to and within the issues joined on these two paragraphs, the error, if any, in overruling the demurrer to the second paragraph of complaint was harmless. *Cincinnati, etc., R. R. Co.* v. *Cregor, Administratrix* (1898), 150 Ind. 625, 50 N. E. 760; *The Evansville and Richmond R. R. Co.* v. *Maddux, by Next Friend* (1893), 134 Ind. 571, 33 N. E. 345; *Attica Bldg. & Loan Assn.* v. *Colvert* (1939), 216 Ind. 192, 23 N. E. (2d) 483.

The appellant assigns as error the action of the court in overruling appellant's motion for judgment on the interrogatories and the answers thereto, notwithstanding the general verdict.

Fifty-two interrogatories were submitted to the jury and answers were returned thereto. By the answers returned to the interrogatories submitted, it was shown that the appellee's deceased was an engineer of forty years experience, and on the night of the injury was

in charge of engine No. 3081, which he was operating over appellant's lines.

The answers disclosed that the appellant maintained an automatic block signal system along the right of way; the two signal posts or towers which the appellee's decedent passed immediately before the collision being No. 810-1 and No. 812-1. The last signal block No. 812-1 was a distance of six hundred and sixty-seven feet from the end of the appellant's train No. 3054, into the rear of which the appellee's decedent collided.

The appellant contends that, had the appellee's decedent obeyed the automatic block signals, the collision would not have occurred. In support of this contention, the appellant relies upon interrogatory No. 49 and the answer thereto, which is as follows:

"49. Did train 3081, on which plaintiff's decedent was engineer, run into the rear of train 3054 on February 14, 1937, because plaintiff's decedent did not observe the signals on semaphores 810-1 and 812-1?

"Answer: Yes."

The appellant contends that this interrogatory and the answer thereto conclusively shows that the sole proximate cause of the collision and the appellee's decedent's injury was the failure to observe and obey the automatic block signals, which were a warning against him immediately preceding the wreck. In support of this contention, the appellant insists that, at the time the appellee's decedent passed automatic block signal No. 810-1, the semaphore was in operation and a yellow light was displayed thereon, which was, under a ruling of the company, an order to him to proceed with restricted speed. The appellant further contends that as the appellee's decedent passed automatic signal block No. 812-1, a red light was displayed on the signal block and a semaphore arm was extended at a right

angle, which, under the rules of the company, was an order to stop and proceed at a speed which would enable the appellee's decedent to properly control his train at all times.

In the light of these contentions, our attention is further directed to interrogatories No. 39 and No. 40 and the answers thereto, which are as follows:

"39. As train 3081 approached semaphore 810-1 on February 14, 1937, was there a yellow light displayed from the top, and was the arm at an angle of forty-five degrees?

"Answer: No evidence.

"40. As train 3081 approached semaphore 812-1, did it display a red light, and was the arm at right angles?

"Answer: No evidence.'

In the light of these answers, it is difficult for us to reconcile them with the answer to interrogatory No. 49, above quoted. If the appellee's decedent's failure to observe the automatic block signals was the cause of the collision, as the jury stated in its answer to interrogatory No. 49, it must have been because the semaphores were against him as he approached. In answer to interrogatories No. 39 and No. 40, however, as to whether or not these automatic signals were in fact against the appellee's decedent as he approached, the jury answered "no evidence." If the contributory negligence of the appellee's decedent was the sole proximate cause of the injury, the burden was upon the appellant to prove such fact. The passing of the automatic signals, when set against the appellee's decedent, was a necessary fact which the appellant must prove in establishing this defense. The jury, by answering the interrogatories with the words "no evidence," in effect found that the automatic signals were not against the appellee's decedent as he approached

them. The effect of such answers were before our Supreme Court in the recent case of *Vanosdol, Receiver* v. *Henderson, Admr.* (1939), 216 Ind. 240, 251, 22 N. E. (2d) 812. In discussing the effect of such answers, the court said:

"A different rule seems to obtain, however, when a jury answers, 'No evidence.' In such instances, it has been held, that the answers amount to a finding against the party having the burden of proving the facts inquired about."

The answer of the jury, therefore, to interrogatory No. 49, to the effect that the accident resulted because the appellee's decedent did not observe these signals on these semaphores, is contradictory of its findings of fact called for in interrogatories No. 39 and No. 40, and, therefore, cannot control the general verdict. ". . . Answers to the interrogatories can not control the general verdict if they are contradictory, although the verdict may be in irreconcilable conflict with some of these answers." *Matchett* v. *The Cincinnati, Wabash and Michigan Railway Company* (1892), 132 Ind. 334, 339, 31 N. E. 792.

The jury by its general verdict found for the appellee. This was in effect a finding of all facts necessary to entitle the appellee to recover and must be so regarded by this court, unless the answers to the interrogatories affirmatively show that such facts do not exist. *The Town of Poseyville* v. *Lewis* (1890), 126 Ind. 80, 25 N. E. 593. The answers to the interrogatories do not affirmatively show that the contributory negligence of the appellee's decedent was the sole proximate cause of the injury complained of, and hence there was accordingly no error in overruling the motion for judgment on the interrogatories.

The fourth error assigned and relied upon by the appellant is the alleged error in overruling appellant's

motion to direct a verdict in its favor at the close of all the evidence. This assignment of error presents no question to this court for review. *Michigan Central R. Co.* v. *Kosmowski* (1919), 70 Ind. App. 145, 121 N. E. 665.

Substantially the same question sought to be presented, however, is properly presented under the assignment that the court erred in overruling the appellant's motion for a new trial. Under this assignment of error, the appellant contends that the evidence shows that the negligence of the plaintiff's decedent, in passing the automatic block signals when they were displaying a yellow and red light, respectively, was the sole proximate cause of his injury and death, and the appellee accordingly cannot recover in this case. In support of this contention, the appellant directs our attention to a well recognized rule of law that where injury or death, to one operating under the Employers' Liability Act, is due primarily to his own negligence, no recovery can be had. See *Sheehan* v. *New York, N. H. & H. R. Co.* (1937), 93 F. (2d) 442; *Davis* v. *Kennedy* (1924), 266 U. S. 147, 69 L. Ed. 212; *Frese* v. *C. B. & Q. R.* (1923), 263 U. S. 1, 68 L. Ed. 131; *Chicago, etc., R. Co.* v. *Schraeder* (1929), 89 Ind. App. 100, 163 N. E. 534.

Under this contention, it is again necessary for us to refer to the answers to the interrogatories returned by the jury with its general verdict. The appellant relies entirely upon the fact that the appellee's decedent was guilty of contributory negligence in passing the automatic signal blocks when the same were operating against him. The appellant nowhere in his brief points out, however, the evidence which conclusively establishes the existence of these facts.

The jury, in answering interrogatories No. 39 and No. 40, above quoted, stated that there was "no evidence" that the automatic signals were displaying yellow and red lights, respectively, as the appellee's decedent approached them. This is, in effect, a finding that they were not in fact displaying such lights. *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308, 90 N. E. 307; *Miller* v. *Coulter* (1914), 57 Ind. App. 295, 107 N. E. 14.

The appellant contends, however, that the allegations of the second paragraph of complaint disclose that appellee's decedent saw and observed the yellow light displayed by signal No. 810-1, and immediately reduced his speed to fifteen miles per hour. The appellant further directs our attention to another allegation in the second paragraph of complaint to the effect that the appellee's decedent saw the red light of the block signal No. 812-1 but that, at the time he observed it, he was too close to the train ahead to enable him to prevent the accident.

These allegations in the second paragraph of complaint were properly before the jury as a part of the pleadings, and it was proper for the jury to consider them as being in the nature of admissions. *Bell* v. *Pavey* (1893), 7 Ind. App. 19, 33 N. E. 1011; *New Albany & Vincennes Plank Road Company* v. *Stallcup* (1878), 62 Ind. 345.

There was also testimony in the record to the effect that these automatic block signals were working before the accident, and that they again worked immediately after the accident, and after the tracks were repaired, and the circuits re-established. There is also further testimony in the record to the effect that the appellee's decedent stated to witnesses, following the accident, that he "ran a yellow block," and that he further stated

that "he got by the yellow block and when he saw the red block, it was too late."

While this evidence was properly before the jury, it apparently gave no weight thereto. Its answers of "no evidence" which it returned to interrogatories No. 39 and No. 40 were in effect a finding against the appellant, upon whom rested the burden of establishing these facts. While the appellant might, at the time these answers were returned into court, have requested the trial court to resubmit these interrogatories to the jury for further consideration, yet no such request was made, and our Supreme Court has held that, even if such request had been made, it would not be error for the trial court to refuse to resubmit such interrogatories as were answered "no evidence." *Vanosdol, Receiver* v. *Henderson, Admr., supra.* At any rate, this court is now bound by the answers returned to the interrogatories as to the existence of the specific facts inquired about. *Sourbier* v. *Brown* (1919), 188 Ind. 554, 123 N. E. 802. We therefore cannot say, as a matter of law, that the evidence conclusively shows that the appellee's decedent was guilty of contributory negligence, which was the sole proximate cause of his death.

The appellant complains of the giving to the jury, at the appellee's request, of appellee's tendered instruction number five, which reads as follows:

"I instruct you that it was the duty of plaintiff's decedent, Charles W. Patterson, in operating his engine just prior to the collision involved in this case to exercise the care and prudence that a man of ordinary judgment and prudence would have used under the circumstances.

"In deciding this question you should take into consideration the condition of the weather and the visibility of block signals, as shown by the evidence, and also the condition of the track, whether

straight or curved, if shown, and whether there were any telegraph poles which obstructed the engineer's view to the west, if shown, and you should also consider, if shown by the evidence, any of the rules of the defendant company then in force, having to do with block signals and their meanings, and any rules having to do with the protecting of the rear of standing trains by flagging or with fusees or torpedoes. And so in this case if you believe from the evidence that plaintiff's decedent, as he approached the rear of the freight train No. 3054 just prior to the collision, saw no flagging signals, nor fusees, nor heard any torpedoes exploded by his engine to warn him of danger ahead, and if you believe that a blinding snow storm was raging at the time so that any block signals could not be seen but for a short distance, then these facts, if shown, are circumstances to be considered by you in connection with the other relevant facts, conditions and circumstances in evidence, in deciding whether plaintiff's decedent was in the exercise of ordinary care in the operation of his locomotive just prior to and at the time of the collision in this case. And I further instruct you in your determination of such question, that in the absence of notice or knowledge to the contrary, the plaintiff's decedent had a right to assume that the defendant's employees in charge of freight train No. 3054 would comply with and obey any such rules, if any, having to do with the protecting of the rear of standing trains if such train No. 3054 should be or remain stopped on the track ahead."

The appellant contends that this instruction was erroneous, and contends that it was the duty of the appellee's decedent to obey the automatic block signals, whether he saw them or not, and the appellant contends that the weather conditions would not excuse any failure to observe said signals. In support of this contention, the appellant directs our attention to the case of *Union Pac. R. R. Co.* v. *Hadley* (1918), 246 U. S. 330, 333, 62 L. Ed. 751, 755, wherein the court, in considering a personal injury case which grew out of the col-

lision of two trains, said: "There were block signals working on the road that gave automatic warning of danger . . . which it was negligent to pass, seen or unseen, as the engine crew knew where they were and that another train was not far ahead. There was a snow storm raging which the jury might have found to be of unprecedented violence, . . ."

It will be seen, from a reading of the above quotation, that the engine crew knew of the location of the signal block, and knew that there was a train not far ahead. Under such circumstances, the crew was chargeable with a duty to observe the signal. The case does not hold, however, that weather conditions and other attending circumstances should have no consideration where the exact location of the signal block is not known, and where the close proximity of a train ahead is likewise unknown. The correct rule, in our opinion, has been stated by the Court of Appeals of New York, in the case of *Wolf* v. *Baltimore & Ohio R. R. Co.* (1934), 264 N. Y. 57, 59, 60, 189 N. E. 780, 781. In this case, the plaintiff's intestate, a locomotive engineer, drove his engine past an automatic block signal during a violent snowstorm, and collided with another train headed in the same direction but then stationary. In this collision, he was killed. The appellee there contended, as in this case, that the passing of the automatic signal block was the sole proximate cause of the collision. The court said:

"There is evidence that the blizzard was so blinding that two employees standing eight feet apart at a point one-half mile from the semaphore could not see each other and that the location of the block signal was invisible from the train. The jury could infer from this evidence that, even assuming decedent looked for the signal, he could not discover its location and, therefore, was unable, under prevailing weather conditions, to know

whether the signal registered danger. The question of fact then arises whether he acted as a reasonable man in proceeding through a storm which rendered all objects invisible."

Bearing further upon the question of negligence, the court considered the duty of the man in charge of the train ahead to put out torpedoes and a flagman to warn the engineer on the train following. The court said:

"A jury, taking into consideration the duty which an engineer owes to passengers in transporting them to their destination and to the public in carrying the mails, might fairly draw an inference of fact that plaintiff's intestate in advancing cautiously at fifteen or twenty miles an hour and in relying upon the crew of a preceding train to obey the rule in respect to warning of its presence by torpedoes acted as a reasonably prudent man and was not guilty of negligence."

In the light of these rules, as laid down by the Court of Appeals of New York, we think there was no error in the giving of appellee's tendered instruction number five.

The appellant further contends that this instruction is inconsistent with and conflicts with appellant's instruction numbered two, which informed the jury that weather conditions or improper working of any parts of the engine did not excuse the engineer from seeing and observing the automatic signals. This instruction, as tendered by the appellant and given, was more favorable to the appellant than it was entitled to under the law; and in so far as it is inconsistent with the correct rules of law, as laid down in instruction number five, above quoted, such inconsistency, if any, was created at the instance and request of the appellant and as to such, the appellant is not now in a position to complain. *Brush* v. *Public Service Co. of Indiana* (1939), 106 Ind. App. 554, 21 N. E. (2d) 83.

Complaint is further made of the giving to the jury, at the appellee's request, of the appellee's requested instruction number six. This instruction, informed the jury that contributory negligence of the appellee's decedent, if found to exist, because of the passing of the automatic signal blocks, would not bar a recovery, but should only be used to diminish the damages, if such were occasioned as a proximate result of the failure of the appellant's employee to properly flag and protect the rear of the train No. 3054. There was no error in the giving of this instruction. Assuming that the jury would determine that the appellee's decedent was guilty of negligence, it might also conclude on the evidence that his negligence was not the sole cause of his death. *Wolf* v. *Baltimore & Ohio R. R. Co., supra.* If the trainman in charge of the train ahead negligently failed to guard the rear thereof, and such negligence proximately contributed to the injuries about which the appellee complains, the fact that the appellee's decedent was also negligent would not preclude a recovery. The Federal Employers' Liability Act imposes liability upon the carrier for injury or death resulting "in whole or in part from the negligence of any of its officers, agents, or employees. . . ." U. S. C. A., Title 45, Section 51, p. 92.

The jury expressly found, by its answers to the interrogatories, that the flagman on train No. 3054, after it stopped, did not proceed back eastward with flag and torpedoes to warn the train crew on train No. 3081 of the position of train No. 3054.

The jury also found that the view of semaphore No. 812-1, as the appellee's decedent approached, was somewhat obstructed by poles and wires along the right of way and by a curve in the track, and there was also evidence to the effect that train No. 3054 had been

standing on the track for about twenty minutes prior to the accident.

In the light of these facts and the attendant circumstances, we cannot say, as a matter of law, that the negligence of the appellee's decedent, if any, in failing to observe the automatic signals, if they were working, was the sole proximate cause of his injury and death.

"Under the provisions of the Federal Employers' Act, 45 U. S. C. A., § 53, contributory negligence on the part of an employee does not bar recovery but simply requires that the damages shall be diminished by the jury in proportionate amount to negligence attributable to such employee. *Seaboard Air Line Ry.* v. *Tilghman*, 237 U. S. 499, 35 S. Ct. 653, 59 L. Ed. 1069. It is the general rule that negligence is a question for the jury to be determined under all the facts and circumstances of the particular case. And it is well settled that where material evidence is in conflict or reasonable men may draw different conclusions from undisputed evidence the case should go to the jury. *Richmond & Danville Railroad Co.* v. *Powers*, 149 U. S. 43, 13 S. Ct. 748, 37 L. Ed. 642." *Ballard* v. *Atchison, T. & S. F. Ry. Co.* (1938), 100 F. (2d) 162, 164.

In support of its motion for a new trial, the appellant contends that the court erred in refusing to give to the jury each of the appellant's tendered instructions Nos. 3, 4, 6, 10, and 11. Each of these instructions informed the jury in substance that the appellee could not recover in this case, if the jury found from the evidence that the appellee's decedent ran by the automatic signals, when they were showing a yellow and red light against him. Instructions Nos. 6, 10, and 11. so tendered, informed the jury that there could be no recovery, if the appellee's decedent violated a specific rule made by the appellant for his protection, and these instructions, so tendered, informed the jury that the

violation of such specific rule would, in law, be the sole proximate cause of the appellee's injuries.

It is our opinion that these instructions, so tendered, were not correct statements of the law as applicable to the facts disclosed in this case, and there was, accordingly, no error in their refusal.

For the reasons heretofore set out, it is our opinion that the trial court committed no reversible error in overruling the appellant's motion for a new trial.

Finding no reversible error, the judgment of the trial court is affirmed.

NOTE.—Reported in 34 N. E. (2d) 960.